UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**96-80201**

| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. _____ |

Plaintiff,

VIOLATIONS:

v.

18 U.S.C. §§ 924(c)(1),
1503, 1951(a), 1962(d) &
1963, and 2.

D-1   JACK WILLIAM TOCCO,
D-2   ANTHONY JOSEPH ZERILLI,
D-3   TONY GIACALONE,
D-4   ANTHONY JOSEPH TOCCO,
D-5   VITO WILLIAM GIACALONE,
D-6   ANTHONY JOSEPH CORRADO,
D-7   PAUL CORRADO (son of Anthony Corrado),
D-8   NOVE TOCCO,
D-9   PAUL CORRADO (son of Dominic Corrado),
D-10  PETER JACK CORRADO,
D-11  PETER ANTHONY CORRADO,
D-12  JOHN BATISTA SCIARROTTA,
D-13  JOHN MICHAEL JARJOSA,
D-14  NORMAN NERSES BAGDASARIAN,
D-15  PAUL JOSEPH TOCCO,
D-16  THOMAS KENNETH LENHARD, and
D-17  FRANK BERT WHITCHER

Defendants.
_____/

## I N D I C T M E N T

THE GRAND JURY CHARGES:

### COUNT ONE

(18 U.S.C. § 1962(d) - Racketeer Influenced
and Corrupt Organizations - Conspiracy)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-7   PAUL CORRADO (son of Anthony Corrado)
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)



## THE ENTERPRISE.

1.   That at all times material to this Indictment, clandestine criminal organization commonly known to its members "Cosa Nostra," and "The Outfit," and commonly known to the general public as the "Mafia," existed in the United States of America.

2.   That at all times material to this Indictment, this clandestine criminal organization [hereinafter referred to as the Cosa Nostra] comprised groups of individuals known as "families" which were based in and about various cities located within the United States of America including Detroit, Michigan; New York City, New York; Chicago, Illinois; Boston, Massachusetts; Buffalo, New York; and Philadelphia, Pennsylvania.

3.   That at all times material to this Indictment, the Cosa Nostra "families" which were based in and about Detroit, New York City, Chicago, Boston, Buffalo, and Philadelphia engaged in criminal activities for financial gain which included sports bookmaking and the operation of illegal lotteries (numbers), extortion (including extortion in exchange for "protection"), making and collecting interest on usurious loans (loansharking), and unlawfully acquiring and maintaining undisclosed interests in gaming casinos otherwise apparently operating lawfully in Nevada.

4.   That from at least in or about January 1966 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI,

2

TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE,
ANTHONY JOSEPH CORRADO, PAUL CORRADO (son of Anthony Corrado), NOVE
TOCCO, and PAUL CORRADO (son of Dominic Corrado), Defendants
herein, as members of the Cosa Nostra "family" located in and about
Detroit, Michigan [hereinafter referred to as the Detroit Cosa
Nostra Family], and others known and unknown to the Grand Jury, did
constitute an enterprise [herein designated the Detroit Cosa Nostra
Family] within the meaning of Title 18, United States Code, Section
1961(4); that is, a group of individuals associated in fact
although not a legal entity engaged in various criminal activities
including: acts indictable under Title 18, United States Code,
Section 892 (relating to making extortionate extensions of credit);
Section 894 (relating to collecting extensions of credit by
extortionate means); Section 1503 (relating to obstruction of
justice); Section 1512 (relating to tampering with a witness);
Section 1951 (relating to interference with commerce by extortion);
and Section 1952 (relating to interstate travel and the use of
interstate facilities in aid of racketeering); acts chargeable
under Section 750.157a(a) of the Michigan Compiled Laws Annotated
[hereinafter referred to as the MCLA] (relating to conspiracy to
commit first degree murder, conspiracy to commit arson, and
conspiracy to commit extortion); Section 750.157a(b) of the MCLA
(relating to conspiracy to violate gambling laws); Section 750.213
(relating to extortion); and in the collection of unlawful debts,
as defined in Title 18, United States Code, Section 1961(6).

        5.    That at all times material to this Indictment, the

3

Detroit Cosa Nostra Family was structured in the following manner,
and the Defendants and other persons employed by and associated
with the Detroit Cosa Nostra Family functioned in the following
roles:

    A.  The Detroit Cosa Nostra Family comprised a group
of individuals commonly known as members.  Many of these
members were related by blood or by marriage to one or
more other members of the Detroit Cosa Nostra Family as
well as to members of other Cosa Nostra families.
Admission to membership in the Detroit Cosa Nostra Family
was based in part on the existence of a relationship by
blood or by marriage to present or past (deceased)
members.

    B.    The Detroit Cosa Nostra Family was headed by a
member commonly known as the Boss.  The Boss was elected
by the other members of the Detroit Cosa Nostra Family.
The Boss was responsible for the overall management of
the activities of the other Detroit Cosa Nostra Family
members, including giving final approval to any activity
generally affecting the Detroit Cosa Nostra Family as a
whole.  The Boss represented the Detroit Cosa Nostra
Family in dealings with other Cosa Nostra families.  The
Boss was responsible for arbitrating and finally deciding
disputes between members, disputes between members and
associates, and disputes between members and members or
associates of other Cosa Nostra families.  The Boss, like

4

any other member of the Detroit Cosa Nostra Family, also
participated in criminal activities for financial gain
and to protect the Detroit Cosa Nostra Family and its
members. The Boss also shared in the division of certain
revenues received by the Boss and other members of the
Detroit Cosa Nostra Family.   Additionally, the Boss of
the Detroit Cosa Nostra Family was at times a member of
the "Commission," a group consisting of the bosses of
Cosa Nostra families located in New York City, Chicago,
and various other locations within the United States of
America, who made decisions concerning matters affecting
all the Cosa Nostra families.

C.   From in and about June 1979 and continuing
through the date of this Indictment, JACK WILLIAM TOCCO,
Defendant herein, was the Boss of the Detroit Cosa Nostra
Family.

D.   Subordinate to the Boss in the Detroit Cosa
Nostra Family, and superior to the remaining members,
were a number of members commonly known as Capos or
Captains.   The Capos were responsible for participating
with the Boss and other Capos in making decisions
concerning the affairs of the Detroit Cosa Nostra Family.
These     decisions     included     decisions     relating     to
membership, leadership positions, and the conducting of
criminal activities by the members and associates of the
Detroit   Cosa   Nostra   Family.     These   decisions   also

5

included approval for any proposed activity which might affect another member or the Detroit Cosa Nostra Family as a whole, such as the use of violence. The Capos were responsible for overseeing and advising certain other members of the Detroit Cosa Nostra Family, and for approving activities these members sought to conduct. Commonly, the members subordinate to a particular Capo were also related to him by blood or by marriage. The Capos, like any of the other members of the Detroit Cosa Nostra Family, also participated in criminal activities for financial gain and to protect the Detroit Cosa Nostra Family and its members. The Capos also shared in the division of certain revenues received by other members of the Detroit Cosa Nostra Family.

E.   From in and about January 1966 and continuing until in or about 1979, a time period during which Joseph Zerilli (now deceased) was the Boss of the Detroit Cosa Nostra Family, JACK WILLIAM TOCCO, Defendant herein, was a member and a Capo in the Detroit Cosa Nostra Family.

F.   At all times material to this Indictment, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, were Capos of the Detroit Cosa Nostra Family.

G.   Subordinate to the Boss and Capos were the remaining members of the Detroit Cosa Nostra Family.

6

These remaining members, like the Boss and Capos, also participated in criminal activities for financial gain and to protect the Detroit Cosa Nostra Family and its members. The members also utilized and directed the activities of individuals commonly known as associates who participated in the activities of members of the Detroit Cosa Nostra Family by performing necessary and helpful roles in criminal activities and who thereby served as insulation against prosecution for the members of the Detroit Cosa Nostra Family.

H.  At all times material to this Indictment, PAUL CORRADO (son of Anthony Corrado), NOVE TOCCO, and PAUL CORRADO (son of Dominic Corrado), Defendants herein, were members of the Detroit Cosa Nostra Family.

## THE RACKETEERING CONSPIRACY.

6.   That from in or about January 1966 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, ANTHONY JOSEPH CORRADO, PAUL CORRADO (son of Anthony Corrado), NOVE TOCCO, and PAUL CORRADO (son of Dominic Corrado), Defendants herein, being persons employed by and associated with the Detroit Cosa Nostra Family, an enterprise as defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce, did unlawfully, knowingly, and willfully

7

combine, conspire, confederate, and agree with each other and with
persons known and unknown to the Grand Jury, to commit an offense
against the United States, to wit: to violate Title 18, United
States Code, Section 1962(c), that is, to conduct and participate,
directly and indirectly, in the conduct of the affairs of the
Detroit Cosa Nostra Family through a pattern of racketeering
activity, to wit, multiple acts as set forth below:

> A.   Acts indictable under Title 18, United States
> Code, Section 892 (relating to making extortionate
> extensions of credit, and conspiracy to do so);

> B.   Acts indictable under Title 18, United States
> Code, Section 894 (relating to collecting extensions of
> credit by extortionate means, and conspiracy to do so);

> C.   Acts indictable under Title 18, United States
> Code, Section 1503 (relating to obstruction of justice);

> D.   Acts indictable under Title 18, United States
> Code, Section 1512 (relating to tampering with a
> witness);

> E.   Acts indictable under Title 18, United States
> Code, Section 1951 (relating to interference with
> commerce by extortion, and attempt, and conspiracy to do
> so);

> F.   Acts indictable under Title 18, United States
> Code, Section 1952 (relating to interstate travel and the
> use of interstate facilities in aid of unlawful business
> enterprises involving gambling);

G. Acts involving murder including acts chargeable under Section 750.157a(a) of the MCLA (relating to conspiracy to commit first degree murder in violation of Section 750.316 of the MCLA);

H. Acts involving gambling including acts chargeable under Section 750.157a(b) of the MCLA (relating to conspiracy to violate gambling laws);

I. Acts involving arson including acts chargeable under Section 750.157a(a) of the MCLA (relating to conspiracy to commit arson in violation of Section 750.77 of the MCLA); and

J. Acts involving extortion including acts chargeable under Sections 750.213 and 750.157a(a) of the MCLA (relating to extortion and conspiracy to commit extortion).

## MANNER AND MEANS OF THE CONSPIRACY.

7. It was a part of the conspiracy that the Defendants and their co-conspirators, in order to protect the Detroit Cosa Nostra Family and its members, would and did commit acts indictable under Title 18, United States Code, Section 1503 (relating to obstruction of justice), and acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness), in connection with efforts to obstruct criminal investigations and to prevent witnesses from testifying about the Detroit Cosa Nostra Family and its members.

8. It was further a part of the conspiracy that the

9

Defendants and their co-conspirators would and did commit acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce by extortion, and attempt, and conspiracy to do so), acts chargeable under Section 750.157a(a) of the MCLA (relating to conspiracy to commit first degree murder in violation of Section 750.316 of the MCLA), acts chargeable under Section 750.157a(a) of the MCLA (relating to conspiracy to commit arson in violation of Section 750.77 of the MCLA), and acts chargeable under Sections 750.213 and 750.157a(a) of the MCLA (relating to extortion and conspiracy to commit extortion), in connection with efforts to obtain money and other property from persons through the use of express and implied threats that harm would be done to those persons, their property, or their businesses if they did not pay.

    A.    It was further a part of the conspiracy that the Defendants and their co-conspirators would target for extortion individuals unlikely to complain to the authorities because they were themselves engaged in conducting unlawful sports bookmaking and operating illegal (numbers) lotteries.

    B.    It was further a part of the conspiracy that the Defendants and their co-conspirators would discuss, plan, and commit acts of violence to induce the targeted sports bookmakers and illegal (numbers) lottery operators to pay them.

    C.    It was further a part of the conspiracy that

10

the Defendants and their co-conspirators would and did construct and detonate a prototype destructive device, that is, an improvised bomb, in connection with a plan to use a similar improvised bomb to induce Ramzi Yaldoo, the operator of an illegal (numbers) lottery, to pay them money.

D.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did shoot the windows of Airtime Communications, located at 8630 Michigan Avenue, Detroit, Michigan, a business owned and operated by Ramzi Yaldoo, to induce him to pay them money.

E.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did plan to murder Jesus Morales, the operator of an illegal (numbers) lottery, who had rebuffed their attempts at extortion.

9.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did commit acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce by extortion, and attempt, and conspiracy to do so), and acts chargeable under Sections 750.213 and 750.157a(a) of the MCLA (relating to extortion and conspiracy to commit extortion), in connection with efforts to obtain money and other property from persons conducting legitimate business activities.

11

A.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did demand "insurance payments" from Harold Stern, a Saginaw, Michigan businessman, to insure the safety of Stern and his family.

B.   It was further a part of the conspiracy that the Defendants and their co-conspirators would discuss and plan to commit acts of violence to induce targeted individuals to pay them.

C.   It was further a part of the conspiracy that NOVE TOCCO, Defendant herein, would and did hire Frank Bert Whitcher to physically assault and beat Carlo John Catenacci in connection with a plan to induce him to pay money, telling Frank Bert Whitcher that he could inflict as much harm to Catenacci as he wished, so long as Catenacci was not killed.

10.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did commit acts indictable under Title 18, United States Code, Section 892 (relating to making extortionate extensions of credit, and conspiracy to do so), and acts indictable under Title 18, United States Code, Section 894 (relating to collecting extensions of credit by extortionate means, and conspiracy to do so), in connection with the conducting of loansharking and the collection of both legitimate and illegitimate debts and claims.

A.   It was further a part of the conspiracy that

12

the Defendants and their co-conspirators would and did make extortionate extensions of credit at usurious rates in excess of ten (10) percent per month.

B.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did make extortionate extensions of credit regarding both legitimate and illegitimate debts and claims.

C.   It was further a part of the conspiracy that the Defendants and their co-conspirators would use the reputation of the Detroit Cosa Nostra Family to assist them in collecting legitimate and illegitimate debts and claims.

11.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did commit acts chargeable under Section 750.157a(b) of the MCLA (relating to conspiracy to violate gambling laws), in connection with the conducting of unlawful gambling activities.

12.   It was further a part of the conspiracy that the Defendants and their co-conspirators would and did commit acts chargeable under Section 750.157a(b) of the MCLA (relating to conspiracy to violate gambling laws), and acts chargeable under Section 750.157a(a) of the MCLA (relating to conspiracy to commit first degree murder in violation of Section 750.316 of the MCLA), in connection with the conducting of unlawful gambling activities.

A.   It was further a part of the conspiracy that the Defendants and their co-conspirators would finance,

13

manage, and conduct unlawful sports bookmaking and
operate illegal (numbers) lotteries and clandestine
"after-hours" gaming operations which were controlled by
the Detroit Cosa Nostra Family.

     B.   It was further a part of the conspiracy that
the Defendants and their co-conspirators would and did
plan to murder Harry Bowman, also known as "Taco,"
because he had interfered with their unlawful gambling
activities.

13.  It was further a part of the conspiracy that the
Defendants and their co-conspirators would and did commit acts
indictable under Title 18, United States Code, Section 1952
(relating to interstate travel and the use of interstate facilities
in aid of unlawful business enterprises involving gambling), in
connection with unlawfully acquiring and attempting to acquire
undisclosed financial interests in gaming casinos operated under
the laws of the State of Nevada, to wit: (a) the Frontier Hotel
located in Las Vegas, Nevada; (b) the Aladdin Hotel and Casino,
located in Las Vegas, Nevada; and (c) the Edgewater Hotel and
Casino, located in Laughlin, Nevada.

     A.   It was further a part of the conspiracy that
the Defendants and their co-conspirators would and did
use individuals, such as Maurice Friedman, as fronts or
straw men to conceal their undisclosed financial
interests in the Frontier Hotel located in Las Vegas,
Nevada from the State of Nevada gaming authorities.

14

B.   It was further a part of the conspiracy that
the Defendants and their co-conspirators would and did
use individuals, such as James Tamer, as fronts or straw
men to represent their interests in the Aladdin Hotel and
Casino located in Las Vegas, Nevada, and to conceal their
interests from the State of Nevada gaming authorities.

C.   It was further a part of the conspiracy that
the Defendants and their co-conspirators would and did
use individuals, such as William Pompili, as fronts or
straw men to represent their interests in the Edgewater
Hotel and Casino located in Laughlin, Nevada, and to
conceal their interests from the State of Nevada gaming
authorities.

14.  It was further a part of the conspiracy that the
Defendants and their co-conspirators would and did share in revenue
from their illegal activities.

15.  It was further a part of the conspiracy that the
Defendants and their co-conspirators, in order to perpetuate the
Detroit Cosa Nostra Family and to facilitate their criminal
activities, would and did coordinate their activities with, and
assist, and seek assistance from, the members and associates of
other Cosa Nostra families.

16.  It was further a part of the conspiracy that the
Defendants and their co-conspirators would and did cause and
procure Theodore Forman, who was then employed as an attorney by
the Tax Division of the United States Department of Justice in

15

Washington, D.C., to unlawfully obtain grand jury material relating to an investigation into the criminal activities of VITO WILLIAM GIACALONE, Defendant herein, his son, Jack Vito Giacalone, and Nathaniel Carl Deday LaRene, his lawyer.

17. It was further a part of the conspiracy that the Defendants and their co-conspirators, in order to perpetuate the Detroit Cosa Nostra Family and to facilitate their criminal activities, would and did attempt to conceal from law enforcement authorities the existence of the Detroit Cosa Nostra Family, the identity of its members and associates, the ways in which it conducted its affairs, and the decisions and orders issued by its leaders to others working for it.

18. It was further a part of the conspiracy that the Defendants each agreed that two or more acts of racketeering activity would be committed in the conduct of the affairs of the Detroit Cosa Nostra Family.

### OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the Defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1. On or about October 20, 1966, ANTHONY JOSEPH ZERILLI, Defendant herein, traveled from Detroit, Michigan to Los Angeles, California.

2. In or about Summer 1973, TONY GIACALONE and VITO WILLIAM GIACALONE, Defendants herein, met Nicholas Trogan near Saginaw,

16

Michigan.

3.    In  or  about  Summer  1973,  ANTHONY  JOSEPH  CORRADO,
Defendant herein, met Nicholas Trogan in Oakland County, Michigan.

4.    In or about July 1977, TONY GIACALONE, Defendant herein,
met Harold Stern in Saginaw, Michigan.

5.    In  or  about  Summer  1978,  TONY  GIACALONE,  Defendant
herein, met Robert Moskal in Saginaw, Michigan.

6.    On  or  about  April  16,  1980,  JACK  WILLIAM  TOCCO  and
ANTHONY JOSEPH CORRADO, Defendants herein, traveled from Detroit,
Michigan to Toledo, Ohio.

7.    On or about July 22, 1980, JACK WILLIAM TOCCO, Defendant
herein, met Rafaelle Quasarano at the Corfu Restaurant located in
Roseville, Michigan.

8.    On or about September 3, 1980, JACK WILLIAM TOCCO and
ANTHONY JOSEPH CORRADO, Defendants herein, met Joseph Todaro and
Joseph Todaro, Jr., members of the Buffalo Cosa Nostra Family, at
Larco's Restaurant located in Detroit, Michigan.

9.    On  or  about  October  1,  1981,  JACK  WILLIAM  TOCCO,
Defendant herein, met Sam Bagnasco, Frank Versaci, Joseph Mirabile,
and others, at The Nugget Restaurant, located at 14620 East Eight
Mile Road, in Detroit, Michigan.

10.   On or about August 18, 1982, VITO WILLIAM GIACALONE,
Defendant herein, traveled from Toledo, Ohio to Romulus, Michigan.

11.   On or about October 17, 1991, NOVE TOCCO and PAUL CORRADO
(son of Dominic Corrado), Defendants herein, drove to the residence
of  Robert  Monro  located  at  13925  Ridgewood  Drive,  Plymouth,

17

Michigan.

12.  On or about November 5, 1991, NOVE TOCCO and PAUL CORRADO
(son of Dominic Corrado), Defendants herein, and John Batista
Sciarrotta, met George Wierzba at the Wyoming Lunch Restaurant,
located at 5063 Wyoming, Dearborn, Michigan.

13.  On or about January 9, 1992, NOVE TOCCO and PAUL CORRADO
(son of Dominic Corrado), Defendants herein, drove by the residence
of Harry Bowman, also known as "Taco," located at 10434 Merlin
Avenue, Detroit, Michigan.

14.  On or about January 10, 1992, ANTHONY JOSEPH CORRADO,
NOVE TOCCO, and PAUL CORRADO (son of Dominic Corrado), Defendants
herein, met at Bobby T's Foods - Spirits, located at 35101 Harper
Avenue, Clinton Township, Michigan.

15.  On or about January 24, 1992, NOVE TOCCO and PAUL CORRADO
(son of Dominic Corrado), Defendants herein, and Peter Jack
Corrado, met John Johns at Elizabeth's By the Lake Restaurant,
located at 23722 Jefferson Avenue, St. Clair Shores, Michigan.

16.  On or about February 2, 1992, PAUL CORRADO (son of
Dominic Corrado), Defendant herein, and John Batista Sciarrotta,
drove to Kelly's Corner, located at 5119 Trenton, Detroit,
Michigan.

17.  On or about February 3, 1992, PAUL CORRADO (son of
Dominic Corrado), Defendant herein, and John Batista Sciarrotta,
drove by the residence of Jesus Morales, located at 2334 Junction,
Detroit, Michigan.

18.  On or about February 10, 1992, ANTHONY JOSEPH CORRADO,

18

NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), Defendants herein, and John Batista Sciarrotta, met at the Travis Restaurant, located at 34396 Harper Avenue, Mt. Clemens, Michigan.

19. On or about February 10, 1992, ANTHONY JOSEPH ZERILLI, NOVE TOCCO, and PAUL CORRADO (son of Dominic Corrado), Defendants herein, met at the Spaghetti Palace Restaurant, located at 31653 Gratiot, Roseville, Michigan.

20. On or about March 18, 1992, ANTHONY JOSEPH CORRADO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, and John Batista Sciarrotta and Norman Nerses Bagdasarian, met at Luciano's Restaurant, located at 39091 Gar-Pointe Plaza, Clinton Township, Michigan.

21. On or about March 22, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, drove by the residence of Jesus Morales, located at 2334 Junction, Detroit, Michigan.

22. In or about April 1992 or May 1992, ANTHONY JOSEPH CORRADO and PAUL CORRADO (son of Anthony Corrado), Defendants herein, received photocopies of official government documents in Birmingham, Michigan from Theodore Forman, then an attorney employed by the Tax Division of the United States Department of Justice.

23. On or about May 8, 1992, PAUL CORRADO (son of Dominic Corrado), Defendant herein, and Norman Nerses Bagdasarian met in a vacant lot near the intersection of Rosa Parks Boulevard and Michigan Avenue, in Detroit, Michigan.

24. On or about May 9, 1992, PAUL CORRADO (son of Dominic

19

Corrado), Defendant herein, and Peter Anthony Corrado detonated a destructive device, that is, an improvised bomb, in the vicinity of Meldrum Road and Marine City Highway, St. Clair County, Michigan.

25.   On or about May 13, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, and Peter Anthony Corrado met at 1546 Shore Club Drive, St. Clair Shores, Michigan.

26.   On or about June 2, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, drove to the vicinity of 8630 Michigan Avenue, Detroit, Michigan, with a destructive device, that is, an improvised bomb, in the automobile.

27.   On or about June 16, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, used a firearm to shoot the windows of Airtime Communications, a business owned and operated by Ramzi Yaldoo, located at 8630 Michigan Avenue, Detroit, Michigan.

28.   On or about June 17, 1992, ANTHONY JOSEPH TOCCO, ANTHONY JOSEPH CORRADO, and PAUL CORRADO (son of Dominic Corrado), Defendants herein, and Peter Jack Corrado met in Sterling Heights, Michigan.

29.   On or about June 26, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, and John Michael Jarjosa met Ramzi Yaldoo in Detroit, Michigan.

30.   In or about Fall 1992, ANTHONY JOSEPH ZERILLI and TONY GIACALONE, Defendants herein, met Carlo John Catenacci, in Macomb County, Michigan.

31.   On or about September 16, 1992, NOVE TOCCO, Defendant

20

herein, met Sam Martin.

32. On or about October 7, 1992, NOVE TOCCO, Defendant herein, and Paul Joseph Tocco, drove to the parking lot of the Sahara Restaurant located at the northwest corner of Coolidge Highway and Nine Mile Road, Oak Park, Michigan.

33. On or about October 7, 1992, NOVE TOCCO, Defendant herein, met George Yatooma in the parking lot of the Sahara Restaurant located at the northwest corner of Coolidge Highway and Nine Mile Road, Oak Park, Michigan.

34. On or about October 23, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, drove by the residence of Harry Bowman, also known as "Taco," located at 10434 Merlin Avenue, Detroit, Michigan.

35. On or about November 16, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, drove to Airtime Communications, a business owned and operated by Ramzi Yaldoo, located at 8630 Michigan Avenue, Detroit, Michigan.

36. On or about December 4, 1992, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, met Daniel Abraham at Drink's Saloon, located at 19380 Allen Road, Brownstown Township, Michigan.

37. On or about December 14, 1992, beginning at approximately 12:35 p.m., NOVE TOCCO, Defendant herein, and Frank Bert Whitcher had a conversation.

38. On or about December 19, 1992, at approximately 3:45 p.m., NOVE TOCCO and ANTHONY JOSEPH ZERILLI, Defendants herein,

21

drove to the Harbor Point Condominiums, a complex containing the
residence of Carlo John Catenacci, at 26421 Harbor Point Drive,
Harrison Township, Michigan.

39.  On or about March 11, 1993, VITO WILLIAM GIACALONE,
Defendant herein, traveled from the Detroit, Michigan area to the
Federal Correctional Institution located at Morgantown, West
Virginia to meet Jack Vito Giacalone.

40.  In or about Fall 1994, NOVE TOCCO, Defendant herein, met
Louis Calcaterra at the Firehouse Lounge, located at 31185 Utica,
Fraser, Michigan.

41.  In or about Fall 1994, NOVE TOCCO, Defendant herein, met
Louis Calcaterra at T.G.I. Fridays Restaurant, located near the
intersection of Schoenherr Road and Hall Road, Sterling Heights,
Michigan.

42.  In or about Summer 1995, NOVE TOCCO, Defendant herein,
met Ramzi Yaldoo and George Yatooma at the Sahara Restaurant
located at the northwest corner of Coolidge Highway and Nine Mile
Road, Oak Park, Michigan.

43.  In or about February 1996, NOVE TOCCO, Defendant herein,
met Ramzi Yaldoo at Airtime Communications, a business owned and
operated by Ramzi Yaldoo, located at 8630 Michigan Avenue, Detroit,
Michigan.

All in violation of Title 18, United States Code, Sections
1962(d) and 1963(a).

## COUNT TWO

### (18 U.S.C. § 1962(d) - Racketeer Influenced and Corrupt Organizations - Conspiracy)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO

1.     The allegations contained in paragraphs one (1) through five (5) of Count One are hereby realleged and incorporated by reference in this Count as if fully set forth herein.

### THE RACKETEERING CONSPIRACY.

6.     That from in or about January 1966 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, being persons employed by and associated with the Detroit Cosa Nostra Family, an enterprise as defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce, did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury, to commit an offense against the United States, to wit: to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Detroit Cosa

Nostra Family through the collection of unlawful debt.

## MANNER AND MEANS OF THE CONSPIRACY.

7.    It was a part of the conspiracy that the Defendants and
their co-conspirators would conduct and participate, directly and
indirectly, in the conduct of the affairs of the Detroit Cosa
Nostra Family through multiple acts of collection of unlawful debt.

8.    It was a part of the conspiracy that the Defendants and
their co-conspirators would and did knowingly collect unlawful
debts and aid, abet, counsel, command, induce, and procure the
collection of unlawful debts in various and varying amounts from
various and varying persons, both known and unknown, said unlawful
debts having been incurred and contracted in gambling activity
which was in violation of the laws of the State of Michigan, and
which was incurred in connection with the business of gambling in
violation of the laws of the State of Michigan (Sections 750.92,
750.157a(b), 750.167(d), 750.301, 750.304, and 750.314 of the
Michigan Compiled Laws Annotated.

9.    It was further a part of the conspiracy that the
Defendants and their co-conspirators would collect unlawful debts,
as defined in Title 18, United States Code, Section 1961(6),
incurred in connection with sports bookmaking and illegal (numbers)
lottery activities conducted by the Defendants and their co-
conspirators.

10.    It was further a part of the conspiracy that each
Defendant agreed that one or more collections of an unlawful debt,
as defined in Title 18, United States Code, Section 1961(6), would

24

be made in the conduct of the affairs of the Detroit Cosa Nostra Family.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the Defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1.   In or about January of each year during the time frame of this Indictment, the Defendants and their co-conspirators would distribute a portion of the profits generated from illegal gambling among themselves and the remaining members of the hierarchy of the Detroit Cosa Nostra Family.

All in violation of Title 18, United States Code, Sections 1962(d) and 1963(a).

## FORFEITURES

1.     The allegations of Counts One and Two of this Indictment
are hereby realleged and incorporated by reference for the purpose
of alleging forfeitures pursuant to the provisions of Title 18,
United States Code, Section 1963.

2.     That JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY
GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, ANTHONY
JOSEPH CORRADO, PAUL CORRADO (son of Anthony Corrado), NOVE TOCCO,
and PAUL CORRADO (son of Dominic Corrado), Defendants herein, have
property constituting and derived from proceeds which they
obtained, directly and indirectly, from a conspiracy to conduct an
enterprise through a pattern of racketeering activity in violation
of Title 18, United States Code, Sections 1962(c) and 1962(d), as
to which proceeds derived therefrom the Defendants are jointly and
severally liable, thereby making all such property, or an amount
equivalent thereto, in whatever form, wherever located, and in
whatever names held, subject to forfeiture to the United States of
America pursuant to Title 18, United States Code, Section
1963(a)(3).

3.     That JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY
GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and
ANTHONY JOSEPH CORRADO, Defendants herein, have property
constituting and derived from proceeds which they obtained,
directly and indirectly, from a conspiracy to conduct an enterprise
through the collection of unlawful debt in violation of Title 18,
United States Code, Sections 1962(c) and 1962(d), as to which

26

proceeds derived therefrom the Defendants are jointly and severally liable, thereby making all such property, or an amount equivalent thereto, in whatever form, wherever located, and in whatever names held, subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 1963(a)(3).

## COUNT THREE

**(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and
in relation to a crime of violence)**

D-9  PAUL CORRADO (son of Dominic Corrado)

1.     That on or about May 9, 1992, in the Eastern District of
Michigan, PAUL CORRADO (son of Dominic Corrado), Defendant herein,
did knowingly use and carry a firearm, to wit: a destructive
device, during and in relation to a crime of violence for which the
Defendant may be prosecuted in a court of the United States, to
wit: conspiracy to violate Section 1962(c) through a pattern of
racketeering activity comprised, in part, of racketeering activity
involving murder and extortion, in violation of Title 18, United
States Code, Sections 1962(d) and 1963(a), as charged in Count One
of this Indictment.

All in violation of Title 18, United States Code, Sections
924(c)(1) and 2.

28

## COUNT FOUR

### (18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and in relation to a crime of violence)

D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)


1.    That on or about June 2, 1992, in the Eastern District of Michigan, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado), Defendants herein, did knowingly use and carry a firearm, to wit: a destructive device, during and in relation to a crime of violence for which the Defendants may be prosecuted in a court of the United States, to wit: conspiracy to violate Section 1962(c) through a pattern of racketeering activity comprised, in part, of racketeering activity involving murder and extortion, in violation of Title 18, United States Code, Sections 1962(d) and 1963(a), as charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1) and 2.

## COUNT FIVE

(18 U.S.C. § 924(c)(1) – Using or carrying a firearm during and
in relation to a crime of violence)

D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)

1.    That on or about June 16, 1992, in the Eastern District
of Michigan, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado),
Defendants herein, did knowingly use and carry a firearm, to wit:
a rifle, during and in relation to a crime of violence for which
the Defendants may be prosecuted in a court of the United States,
to wit: conspiracy to violate Section 1962(c) through a pattern of
racketeering activity comprised, in part, of racketeering activity
involving murder and extortion, in violation of Title 18, United
States Code, Sections 1962(d) and 1963(a), as charged in Count One
of this Indictment.

All in violation of Title 18, United States Code, Sections
924(c)(1) and 2.

## COUNT SIX

**(18 U.S.C. § 1951 - Conspiracy to Interfere with Commerce by Extortion)**

| | |
|---|---|
| D-1 | JACK WILLIAM TOCCO |
| D-2 | ANTHONY JOSEPH ZERILLI |
| D-3 | TONY GIACALONE |
| D-4 | ANTHONY JOSEPH TOCCO |
| D-5 | VITO WILLIAM GIACALONE |
| D-6 | ANTHONY JOSEPH CORRADO |
| D-8 | NOVE TOCCO |
| D-9 | PAUL CORRADO (son of Dominic Corrado) |
| D-10 | PETER JACK CORRADO |
| D-11 | PETER ANTHONY CORRADO |
| D-12 | JOHN BATISTA SCIARROTTA |
| D-13 | JOHN MICHAEL JARJOSA |
| D-14 | NORMAN NERSES BAGDASARIAN |
| D-15 | PAUL JOSEPH TOCCO |
| D-16 | THOMAS KENNETH LENHARD |

1. That beginning in or about April 1991 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, ANTHONY JOSEPH CORRADO, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), PETER JACK CORRADO, PETER ANTHONY CORRADO, JOHN BATISTA SCIARROTTA, JOHN MICHAEL JARJOSA, NORMAN NERSES BAGDASARIAN, PAUL JOSEPH TOCCO, and THOMAS KENNETH LENHARD, Defendants herein, and other persons both known and unknown to the Grand Jury, did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree together and with each other, to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United

31

States Code, Section 1951(b)(2), in that the Defendants did agree to obtain the property of Robert Monro, Jesus Morales, George Wierzba, Ramzi Yaldoo, John Johns, George Yatooma, Sam Martin, Daniel Abraham, and George Sophiea: to wit, United States currency, with their consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

All in violation of Title 18, United States Code, Section 1951(a).

## COUNT SEVEN

(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and
in relation to a crime of violence)

D-9 PAUL CORRADO (son of Dominic Corrado)
D-11 PETER ANTHONY CORRADO

1.      That on or about May 9, 1992, in the Eastern District of
Michigan, PAUL CORRADO (son of Dominic Corrado) and PETER ANTHONY
CORRADO, Defendants herein, did knowingly use and carry a firearm,
to wit: a destructive device, during and in relation to a crime of
violence for which the Defendants may be prosecuted in a court of
the United States, to wit: conspiracy to interfere with commerce by
extortion in violation of Title 18, United States Code, Section
1951(a), as charged in Count Six of this Indictment.

All in violation of Title 18, United States Code, Sections
924(c)(1) and 2.

33

## COUNT EIGHT

(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and
in relation to a crime of violence)

D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-12  JOHN BATISTA SCIARROTTA


   1.   That on or about June 2, 1992, in the Eastern District of
Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and
JOHN BATISTA SCIARROTTA, Defendants herein, did knowingly use and
carry a firearm, to wit: a destructive device, during and in
relation to a crime of violence for which the Defendants may be
prosecuted in a court of the United States, to wit: conspiracy to
interfere with commerce by extortion in violation of Title 18,
United States Code, Section 1951(a), as charged in Count Six of
this Indictment.

   All in violation of Title 18, United States Code, Sections
924(c)(1) and 2.

34

## COUNT NINE

**(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and in relation to a crime of violence)**

D-8 NOVE TOCCO
D-9 PAUL CORRADO (son of Dominic Corrado)

1. That on or about June 16, 1992, in the Eastern District of Michigan, PAUL CORRADO (son of Dominic Corrado) and NOVE TOCCO, Defendants herein, did knowingly use and carry a firearm, to wit: a rifle, during and in relation to a crime of violence for which the Defendants may be prosecuted in a court of the United States, to wit: conspiracy to interfere with commerce by extortion in violation of Title 18, United States Code, Section 1951(a), as charged in Count Six of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1) and 2.

35

## COUNT TEN

(18 U.S.C. § 1951 - Interference with Commerce by Extortion)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-12 JOHN BATISTA SCIARROTTA

1.    That beginning in or about April 1991 and continuing through in or about October 1991, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN BATISTA SCIARROTTA, Defendants herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did obtain the property of Robert Monro: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.    That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

36

## COUNT ELEVEN

**(18 U.S.C. § 1951 – Attempted Interference with Commerce by Extortion)**

D-1  JACK WILLIAM TOCCO
D-2  ANTHONY JOSEPH ZERILLI
D-3  TONY GIACALONE
D-4  ANTHONY JOSEPH TOCCO
D-5  VITO WILLIAM GIACALONE
D-6  ANTHONY JOSEPH CORRADO
D-8  NOVE TOCCO
D-9  PAUL CORRADO (son of Dominic Corrado)
D-12 JOHN BATISTA SCIARROTTA

1.     That in or about Summer 1991, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN BATISTA SCIARROTTA, Defendants herein, did knowingly and unlawfully attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did attempt to obtain the property of Jesus Morales: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm.

2.     That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

37

## COUNT TWELVE

**(18 U.S.C. § 1951 – Interference with Commerce by Extortion)**

```
D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-12  JOHN BATISTA SCIARROTTA
D-14  NORMAN NERSES BAGDASARIAN
```

1.     That beginning in or about November 1991 and continuing
through in or about April 1994, the exact dates being unknown to
the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO,
PAUL CORRADO (son of Dominic Corrado), JOHN BATISTA SCIARROTTA, and
NORMAN NERSES BAGDASARIAN, Defendants herein, did knowingly and
unlawfully obstruct, delay, and affect commerce as that term is
defined in Title 18, United States Code, Section 1951(b)(3), and
the movement of articles and commodities in such commerce, by
extortion, as that term is defined in Title 18, United States Code,
Section 1951(b)(2), in that the Defendants did obtain the property
of George Wierzba: to wit, United States currency, with his consent
having been induced by the wrongful use of actual and threatened
force, violence, and fear, including fear of economic harm.

2.     That at the said time and place, JACK WILLIAM TOCCO,
ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO
WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein,
did knowingly aid, abet, counsel, command, induce, and procure the
commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections
1951(a) and 2.

## COUNT THIRTEEN

(18 U.S.C. § 1951 - Interference with Commerce by Extortion)

D-1    JACK WILLIAM TOCCO
D-2    ANTHONY JOSEPH ZERILLI
D-3    TONY GIACALONE
D-4    ANTHONY JOSEPH TOCCO
D-5    VITO WILLIAM GIACALONE
D-6    ANTHONY JOSEPH CORRADO
D-8    NOVE TOCCO
D-9    PAUL CORRADO (son of Dominic Corrado)
D-11   PETER ANTHONY CORRADO
D-12   JOHN BATISTA SCIARROTTA
D-13   JOHN MICHAEL JARJOSA
D-16   THOMAS KENNETH LENHARD

1.    That beginning in or about January 1992 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), PETER ANTHONY CORRADO, JOHN BATISTA SCIARROTTA, JOHN MICHAEL JARJOSA, and THOMAS KENNETH LENHARD, Defendants herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did obtain the property of Ramzi Yaldoo: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.    That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

39

## COUNT FOURTEEN

(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and
in relation to a crime of violence)

D-9 PAUL CORRADO (son of Dominic Corrado)
D-11 PETER ANTHONY CORRADO

1. That on or about May 9, 1992, in the Eastern District of
Michigan, PAUL CORRADO (son of Dominic Corrado) and PETER ANTHONY
CORRADO, Defendants herein, did knowingly use and carry a firearm,
to wit: a destructive device, during and in relation to a crime of
violence for which the Defendants may be prosecuted in a court of
the United States, to wit: interference with commerce by extortion
in violation of Title 18, United States Code, Section 1951(a), as
charged in Count Thirteen of this Indictment.

All in violation of Title 18, United States Code, Sections
924(c)(1) and 2.

## COUNT FIFTEEN

(18 U.S.C. § 924(c)(1) – Using or carrying a firearm during and in relation to a crime of violence)

D-8 NOVE TOCCO
D-9 PAUL CORRADO (son of Dominic Corrado)
D-12 JOHN BATISTA SCIARROTTA

1. That on or about June 2, 1992, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN BATISTA SCIARROTTA, Defendants herein, did knowingly use and carry a firearm, to wit: a destructive device, during and in relation to a crime of violence for which the Defendants may be prosecuted in a court of the United States, to wit: interference with commerce by extortion in violation of Title 18, United States Code, Section 1951(a), as charged in Count Thirteen of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1) and 2.

## COUNT SIXTEEN

(18 U.S.C. § 924(c)(1) - Using or carrying a firearm during and
in relation to a crime of violence)

D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)

1.    That on or about June 16, 1992, in the Eastern District

of Michigan, NOVE TOCCO and PAUL CORRADO (son of Dominic Corrado),

Defendants herein, did knowingly use and carry a firearm, to wit:

a rifle, during and in relation to a crime of violence for which

the Defendants may be prosecuted in a court of the United States,

to wit: interference with commerce by extortion in violation of

Title 18, United States Code, Section 1951(a), as charged in Count

Thirteen of this Indictment.

All in violation of Title 18, United States Code, Sections

924(c)(1) and 2.

42

## COUNT SEVENTEEN

### (18 U.S.C. § 1951 - Attempted Interference with Commerce by Extortion)

D-1  JACK WILLIAM TOCCO
D-2  ANTHONY JOSEPH ZERILLI
D-3  TONY GIACALONE
D-4  ANTHONY JOSEPH TOCCO
D-5  VITO WILLIAM GIACALONE
D-6  ANTHONY JOSEPH CORRADO
D-8  NOVE TOCCO
D-9  PAUL CORRADO (son of Dominic Corrado)
D-10 PETER JACK CORRADO

1.   That in or about January 1992, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and PETER JACK CORRADO, Defendants herein, did knowingly and unlawfully attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did attempt to obtain the property of John Johns: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm.

2.   That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

43

## COUNT EIGHTEEN

### (18 U.S.C. § 1503 - Obstruction of Justice)

D-6 ANTHONY JOSEPH CORRADO
D-7 PAUL CORRADO (son of Anthony Corrado)

1. That at all times material to this Indictment, the Tax Division of the United States Department of Justice [hereinafter referred to as the Tax Division] had final approval authority over all proposed federal criminal income tax prosecutions to be brought in the United States of America.

2. That at all times material to this Indictment, attorneys assigned to the Criminal Enforcement Section of the Tax Division were responsible for reviewing information submitted by special agents of the Criminal Investigation Division of the Internal Revenue Service to determine whether to authorize prosecution for federal criminal income tax violations in particular cases.

3. That at all times material to this Indictment, Theodore Forman was employed as an attorney by the Criminal Enforcement Section of the Tax Division in Washington, D.C.

4. That at all times material to this Indictment, among the information included in reports submitted by special agents of the Criminal Investigation Division of the Internal Revenue Service to attorneys in the Criminal Enforcement Section of the Tax Division, in connection with their evaluation of the merits of proposed federal criminal income tax prosecutions, were transcripts of grand jury testimony obtained during the course of federal criminal income tax investigations.

5. That at all times material to this Indictment, Theodore

44

Forman, as an attorney employed by the Criminal Enforcement Section of the Tax Division, knew that the secrecy of transcripts of grand jury testimony was protected by federal law which limits their disclosure to only certain authorized persons, and was responsible for upholding this law.

6. That in or about 1991, special agents of the Criminal Investigation Division of the Internal Revenue Service began participating in a grand jury investigation, designated as grand jury case number 91-3-4, then being conducted in Detroit, Michigan, into federal criminal violations, including federal income tax offenses, which had possibly been committed by Vito William Giacalone and others [hereinafter referred to as Grand Jury Investigation 91-3-4]. Grand Jury Investigation 91-3-4 continued into 1992, and included witness interviews, analysis of financial records and taxpayer information, and the testimony of witnesses before a federal grand jury in the Eastern District of Michigan.

7. That in or about March 1992, a report on Grand Jury Investigation 91-3-4 prepared by a special agent of the Criminal Investigation Division of the Internal Revenue Service assigned to the case was received by the Criminal Enforcement Section of the Tax Division. The report, which was submitted seeking approval for prosecution, and its attachments included a summary of the investigation, taxpayer information, and transcripts of testimony before the federal grand jury. The report also contained an explanation of the method of proof used in the investigation, a discussion of potential defenses, and the special agent's

45

conclusions and recommendations.  Also attached to the report was
a list of witnesses, their locations or addresses, and, in some
instances, their telephone numbers.  None of this material was then
of public record.    Disclosure and release of the taxpayer
information and grand jury testimony contained in this report were
limited by federal law to only certain authorized persons.

8.   That while employed by the Criminal Enforcement Section
of the Tax Division, although not assigned to the review of Grand
Jury Investigation 91-3-4, Theodore Forman had access to the office
of the attorney in the Tax Division in which the special agent's
report and attachments regarding Grand Jury Investigation 91-3-4
were stored.

9.   That between in or about April 1992 and in or about June
1992, the exact dates being unknown to the Grand Jury, in the
Eastern District of Michigan, ANTHONY JOSEPH CORRADO and PAUL
CORRADO (son of Anthony Corrado), Defendants herein, did corruptly
endeavor to influence, obstruct, and impede the due administration
of justice in that ANTHONY JOSEPH CORRADO and PAUL CORRADO (son of
Anthony Corrado), Defendants herein, knowing that federal grand
jury proceedings were then pending in connection with Grand Jury
Investigation 91-3-4, did obtain and disclose information about the
investigation which could have influenced or otherwise affected the
proceedings of the federal grand jury by inducing and causing
Theodore Forman to make and deliver to ANTHONY JOSEPH CORRADO and
PAUL CORRADO (son of Anthony Corrado), Defendants herein, an
unauthorized  photocopy  of  the  special  agent's  report  and

46

accompanying materials submitted to the Criminal Enforcement Section of the Tax Division in connection with Grand Jury Investigation 91-3-4 which included information about witnesses and transcripts of the testimony of witnesses who had testified before the federal grand jury.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT NINETEEN

(18 U.S.C. § 1503 - Obstruction of Justice)

D-7  PAUL CORRADO (son of Anthony Corrado)

1.    The allegations contained in paragraphs one (1) through eight (8) of Count Eighteen are hereby realleged and incorporated by reference in this Count as if fully set forth herein.

9.    That in or about June 1992, a supplemental report on Grand Jury Investigation 91-3-4 detailing possible criminal tax violations committed by Jack Vito Giacalone, prepared by a special agent of the Criminal Investigation Division of the Internal Revenue Service assigned to the case was received by the Criminal Enforcement Section of the Tax Division. The supplemental report, which was submitted seeking approval for prosecution, included a summary of the investigation and a summary of testimony before the federal grand jury.  The supplemental report also contained an explanation of the method of proof used in the investigation and the special agent's conclusions and recommendations. None of this material was then of public record. Disclosure and release of the grand jury testimony contained in this report was limited by federal law to only certain authorized persons.

10.    That between in or about June 1992 and in or about July 1992, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, PAUL CORRADO (son of Anthony Corrado), Defendant herein, did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that PAUL CORRADO (son of Anthony Corrado), Defendant herein, knowing that

48

Case 9:96-cr-06029-KAM-JAM Document STRIKE Entered on FLSD Docket 03/18/1996 Page 49 of 57

federal grand jury proceedings were then pending in connection with Grand Jury Investigation 91-3-4, did attempt to obtain information about the investigation which could have influenced or otherwise affected the proceedings of the federal grand jury by inducing and causing Theodore Forman to make an unauthorized photocopy of the special agent's supplemental report submitted to the Criminal Enforcement Section of the Tax Division in connection with Grand Jury Investigation 91-3-4 and concerning possible criminal tax violations which had been committed by Jack Vito Giacalone which included information about witnesses and about the testimony of witnesses who had testified before the federal grand jury.

All in violation of Title 18, United States Code, Section 1503.

## COUNT TWENTY

### (18 U.S.C. § 1951 - Interference with Commerce by Extortion)

```
D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-13  JOHN MICHAEL JARJOSA
D-15  PAUL JOSEPH TOCCO
```

1.    That beginning in or about September 1992 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), JOHN MICHAEL JARJOSA, and PAUL JOSEPH TOCCO, Defendants herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did obtain the property of George Yatooma: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.    That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the

50

commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNT TWENTY-ONE

**(18 U.S.C. § 1951 - Attempted Interference with Commerce by Extortion)**

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-13  JOHN MICHAEL JARJOSA

1.    That in or about September 1992 and continuing through in or about December 1992, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN MICHAEL JARJOSA, Defendants herein, did knowingly and unlawfully attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did attempt to obtain the property of Sam Martin: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm.

2.    That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

52

## COUNT TWENTY-TWO

### (18 U.S.C. § 1951 - Conspiracy to Interfere with Commerce by Extortion)

D-2  ANTHONY JOSEPH ZERILLI
D-3  TONY GIACALONE
D-8  NOVE TOCCO
D-17 FRANK BERT WHITCHER

1.  That beginning in or about Fall 1992 and continuing through at least on or about December 22, 1992, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, NOVE TOCCO, and FRANK BERT WHITCHER, Defendants herein, and other persons both known and unknown to the Grand Jury, did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree together and with each other, to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did agree to obtain the property of Carlo John Catenacci: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

All in violation of Title 18, United States Code, Section 1951(a).

## COUNT TWENTY-THREE

(18 U.S.C. § 1951 - Interference with Commerce by Extortion)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-13  JOHN MICHAEL JARJOSA

1.     That beginning in or about December 1992 and continuing through in or about 1993, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN MICHAEL JARJOSA, Defendants herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did obtain the property of Daniel Abraham: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.     That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

54

## COUNT TWENTY-FOUR

(18 U.S.C. § 1951 - Interference with Commerce by Extortion)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO
D-9   PAUL CORRADO (son of Dominic Corrado)
D-13  JOHN MICHAEL JARJOSA

1.    That beginning in or about 1993 and continuing through in or about September 1995, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, PAUL CORRADO (son of Dominic Corrado), and JOHN MICHAEL JARJOSA, Defendants herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendants did obtain the property of George Sophiea: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.    That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

55

## COUNT TWENTY-FIVE

(18 U.S.C. S 1951 - Interference with Commerce by Extortion)

D-1   JACK WILLIAM TOCCO
D-2   ANTHONY JOSEPH ZERILLI
D-3   TONY GIACALONE
D-4   ANTHONY JOSEPH TOCCO
D-5   VITO WILLIAM GIACALONE
D-6   ANTHONY JOSEPH CORRADO
D-8   NOVE TOCCO

1.      That beginning in or about Fall 1994 and continuing through in or about Winter 1994-95, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, NOVE TOCCO, Defendant herein, did knowingly and unlawfully obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the Defendant did obtain the property of Louis Calcaterra: to wit, United States currency, with his consent having been induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic harm.

2.      That at the said time and place, JACK WILLIAM TOCCO, ANTHONY JOSEPH ZERILLI, TONY GIACALONE, ANTHONY JOSEPH TOCCO, VITO WILLIAM GIACALONE, and ANTHONY JOSEPH CORRADO, Defendants herein, did knowingly aid, abet, counsel, command, induce, and procure the

56

commission of the above alleged offense.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

THIS IS A TRUE BILL.


GRAND JURY FOREPERSON


SAUL A. GREEN
United States Attorney

KEITH E. CORBETT
Assistant Chief,
Criminal Division


DAVID E. MORRIS
Assistant U.S. Attorney


JAMES M. WOUCZYNA
Assistant U.S. Attorney

DATED: March 13, 1996.

57